WEINSTEIN & NUMBERS, LLP
115 WARD STREET
LARKSPUR, CALIFORNIA 94939

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RMC Water and Environment, a California Corporation;<br><br>    Plaintiff,<br><br>  v.<br><br>Travelers Casualty and Surety Company of America, a Connecticut Corporation; and DOES 1-50, Inclusive,<br><br>    Defendants. | Case No.: 3:17-cv-00379-MEJ<br><br>**AMENDED [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW RE DUTY TO DEFEND [AS MODIFIED]**<br><br>Hon. Maria-Elena James<br><br>Action Filed:    January 25, 2017 |

Pursuant to this Court's ORDER RE: MOTION FOR SUMMARY JUDGMENT dated October 3, 2017 (ECF No. 31), Plaintiff as the prevailing party on the cross-motions for summary judgment regarding Defendant Travelers' duty to defend submits this Amended [Proposed] Findings of Fact and Conclusions of Law.

The Parties filed cross-motions for summary judgment on the duty to defend as a matter of law based on stipulated facts. Joint Statement of Undisputed Facts ("Joint Statement"), ECF No. 20. The cross-motions came before the Court for oral argument on September 28, 2017. Following oral argument, the Court issued the ORDER RE: MOTION FOR SUMMARY JUDGMENT, granting RMC's motion and denying Travelers' motion.

Pursuant to FRCP 52(a) and 52(c), after considering the pleadings, the evidence, the arguments, and briefs from counsel, and in view of this Court's October 3, 2017 Order, which is incorporated herein by reference, the Court makes the following findings of fact and conclusions of law. To the extent that any of the findings of fact are more appropriately considered conclusions of law, they shall be deemed as such.

**FINDINGS OF FACT**

1. Plaintiff RMC Water and Environment ("RMC") is a California corporation with its principal place of business in Walnut Creek, California. RMC is an environmental engineering company that specializes in water-related projects. Joint Statement ¶ 2.

2. Travelers Casualty and Surety Company of America ("Travelers") issued a policy of insurance to RMC, which included "Private Company Directors and Officers Liability" (D&O) coverage, among multiple other coverages ("the Policy"). The D&O coverage affords coverage for "loss" for "wrongful acts" committed by RMC.

3. The Policy provides, among other coverages, that: "The Company shall pay on behalf of … the **Insured Organization Loss** for **Wrongful Acts**." *Id.*, Exh. 2 p. 57 (bold terms are original and indicate defined terms). "Loss" includes "**Defense Expenses** and money which an **Insured** is legally obligated to pay as a result of a **Claim**, including settlements; judgments; … compensatory damages; punitive or exemplary damages or the multiple portion of any multiplied damage award if insurable under the applicable law most favorable …; … interest; and legal fees and expenses …." *Id.*, Exh. 2 at p. 58. The policy defines "Wrongful Act" as "any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty or neglect by, or any matter asserted against, the **Insured Organization** …." *Id.*, Exh. 2 at p. 59.

4. The Policy also includes an explicit duty to defend provision: "the Company shall have the right and duty to defend any Claim covered by a Liability Coverage, even if the allegations are groundless, false or fraudulent." *Id.*, Exh. 2 at p. 6 (item 7) and p. 12 ¶ E.1.a. The D&O coverage also contains an endorsement entitled "**Architects and Engineers Professional Services Exclusion**" which states, in relevant part:

> It is agreed that solely with respect to the **Liability Coverage(s)** shown above, such **Liability Coverage(s)** shall not apply to, and the Company shall have no duty to defend or to pay, advance or reimburse **Defense Expenses** for, any **Claim** based upon, alleging, arising out of, or in any way relating to, directly or indirectly, any actual or alleged act, error or omission with respect to the rendering of, or failure to render professional services for any party in connection with the **Insured Organization's** business as architects or engineers.

*Id.*, Exh. 2 at p. 19.

5. RMC was sued in an underlying third party action, (*California-American Water Company v. Marina Coast Water District, et al.*, case no. CGC-15-546632) ("the Damages Action"), related to a Regional Desalinization Project ("the RDP") that never got off the ground. California-American Water Company ("Cal-Am"), Monterey County Water Resources Agency ("the County Agency") and Marina Coast Water District ("Marina") were collaborating on the Project when it fell apart, and litigation ensued.

6. California-American Water Company ("Cal-Am"), Monterey County Water Resources Agency (the "County Agency"), and Marina Coast Water District ("Marina") were working together on the RDP, and entered into a series of interrelated agreements to collaborate on the RDP beginning in 2010.

7. On February 22, 2010, Marina retained RMC to provide services in relation to the RDP under a separate contract ("the Marina Contract"). *Id.* ¶ 3; Exh. 1. The scope of work under the Marina contract was described as "program management and engineering support of the [RDP]." *Id.*, Exh. 1 at pp. 1, 7-9.

8. At Marina's direction, RMC hired Stephen Collins as a consultant to provide institutional support, outreach, and strategic planning in connection with the Marina Contract in January 2010. *Id.*, Exh. 4, pp. 11, 17. At the time, Collins was a member of the County Agency's Board of Directors. *Id.* ¶ 5.

9. RMC terminated Collins' subcontract in December of 2010. *Id.* ¶ 7. In January 2011, the County Agency, Cal-Am, Marina, and RMC entered into the Project Management Agreement, appointing RMC as their joint project manager for the next phases of the RDP. *Id.* ¶ 8. In February 2011, Collins recused himself from a County Agency Board of Directors vote on the selection of RMC as the project manager for the RDP. *Id.* ¶ 9.

10. Collins later was prosecuted for, and pleaded no contest to, a felony violation of California Government Code section 1090, which prohibits County officers of employees from being financially interested in any contract made by them in their official capacity, or by any board of which they are members. *Id.* ¶ 5.

11. Several parties sued to invalidate a number of contracts related to the RDP based on

Collins' involvement and conviction in a separate lawsuit to which RMC was not a party; as a result, four of the five contracts were invalidated, including the Project Management Agreement. (*California-American Water Co. v. Marina Coast Water District*, Case No. CGC-13-528312, San Francisco Superior Court); *California American Water Co. v, Marina Coast Water District*, 2 Cal. App. 5th 748 (2016); Joint Statement ¶¶ 16, 22. RMC was not a party to the other four RDP contracts. The Marina Contract was not at issue in that litigation.

12. Cal-Am and the County Agency sued Marina and RMC, asserting against RMC claims for negligent and intentional interference with prospective economic advantage, unfair competition, and False Act Claims (the "Damages Action"). Joint Stmt., Ex. 3 (Damages Compl.). The wrongful conduct asserted therein is the "retaining Collins as a paid consultant" which "directly and proximately resulted in Collins' felony conduct" and the voiding of several agreements. *Id.* ¶¶ 22, 27; *see also id.* ¶ 45 ("RMC's retention of Collins in violation of section 1090 . . . was unlawful, unfair, and fraudulent . . . [and] led to the unraveling" of the contracts). The Damages Complaint also alleged that RMC "charg[ed] Monterey for engineering services performed in connection with the RDP when RMC knew or reasonably should have known the services it provided to Monterey were worthless . . . as a . . . result of the criminal conflict of interest RMC had paid Collins to commit. . . . render[ing] the RDP agreements void, caus[ing] the RDP to collapse and render[ing] RMC's services of no value whatsoever." *Id.* ¶ 49. In the Second Amended Damages Complaint, plaintiffs also added against RMC a claim for concealment based on its failure to disclose the illegal conflict of interest with the intent of inducing plaintiffs to proceed with the RDP, as well as a negligence claim based on RMC's failure to ensure that any consultants it hired complied with section 1090. *See* Joint Stmt., Ex. 5 (SAC for Damages) ¶¶ 21-32. It further alleges that "RMC knew that Collins' retention created, or posed a substantial risk of creating, a financial conflict of interest in violation of section 1090 of the Government Code" but that RMC failed to disclose those facts. *Id.*, Exh. 5, pp. 6-7, ¶¶ 22-24.

13. In October 2011, while the Policy was in effect, RMC notified Travelers of a controversy surrounding RMC's hiring of Collins and the possibility that it would result in a claim against RMC. *Id.* ¶ 13. In response to RMC's notification, Travelers opened a file and awaited

further information regarding any actual claim. *Id.* ¶ 14.

14. Promptly after the Damages Action was filed, RMC tendered its defense of the Damages Action to Travelers. *Id.* ¶ 19. On August 20, 2015, Travelers declined to defend RMC. *Id.* ¶ 19, Exh. 4. Travelers acknowledged that the claim related back to the notice and was made within the 2010-2011 Policy. *Id.*, Exh. 4 at p. 4. Travelers declined to defend RMC, relying on the Architects and Engineers Professional Services Exclusion. *Id.*, Exh. 4 at p. 5.

15. RMC filed its complaint in this action for breach of contract, breach of the covenant of good faith and fair dealing, declaratory relief, and violations of California Business and Professions code section 17200 *et seq*. in California state court on December 2, 2016. Travelers removed the case to federal court on January 25, 2017. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1441(b) (removal jurisdiction) and 28 U.S.C. § 1332 (diversity jurisdiction).

## CONCLUSIONS OF LAW

1. Summary judgment or adjudication is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to adjudication as a matter of law as to any claim or defense. Fed. R. Civ. P. 56(c). This Court applies California substantive insurance law to determine whether or not there is a duty to defend where jurisdiction is based upon diversity of citizenship. *Erie R.R. v. Tompkins,* 304 U.S. 64 (1938). The question of whether there is a duty to defend is a question of law. *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995), *as modified on denial of reh'g* (Oct. 26, 1995).

2. In order to prevail on the duty to defend, the insured need only show that there is a "bare potential" for coverage, while the insurer must conclusively prove that none of the facts alleged or known to it could give rise to coverage under any conceivable theory. *Montrose Chem. Corp. v. Sup. Ct.*, 6 Cal. 4th 287, 295 (1993) ("*Montrose I*"). "To prevail, the insured must prove the existence of a *potential for coverage,* while the insurer must establish *the absence of any such potential.* In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*." *Id.* at 300. This duty is extremely broad and exists independently of the insurer's duty to indemnify. *Id*. at 295. Indeed, the duty to defend is

5

AMENDED [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW
Case No.: 3:17-cv-00379-MEJ

excused "only where the third party complaint can *by no conceivable theory raise a single issue which could bring it within the policy coverage.*" *Id.* (quoting *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 276 n.15 (1966)).

3. In interpreting an insurance policy, a court must give effect to the "mutual intention" of the parties, which is to be determined, if possible, solely from the written provisions of the policy and their clear and explicit meaning, understood in the ordinary and popular sense. *Waller*, 11 Cal. 4th at 18 (citing *AIU Ins. Co. v. Sup. Ct.*, 51 Cal. 3d 807, 821-22 (1990); *Bank of the West v. Sup. Ct.*, 2 Cal. 4th 1254, 1264-65 (1992); Cal. Civ. Code §§ 1636–1644).

4. Before "considering exclusions, a court must examine the coverage provisions to determine whether a claim falls within [the policy terms]." *Waller*, 11 Cal. 4th at 16 (internal quotation marks and citation omitted). The Court finds that RMC has met its prima facie burden to show that the allegations in the Damages Action fall within the broad coverage grant in the Travelers Policy for "wrongful acts," which include "any matter asserted against" RMC. Joint Statement, Exh. 2 at p. 59. It is also undisputed that RMC timely provided notice of a potential claim and tendered the claim. Joint Statement, ¶¶ 13-14, Exh. 4 at p. 4.

5. Travelers took the position that it has no duty to defend RMC in the Damages Action based solely on the "Architects and Engineers Professional Services Exclusion." Because Travelers relied on exclusionary language, it bore the burden of proving that the exclusion eliminated any potential for coverage. "An insurer may rely on an exclusion to deny coverage only if it provides conclusive evidence demonstrating that the exclusion applies. . . . Thus, an insurer that wishes to rely on an exclusion has the burden of proving, through *conclusive evidence*, that the exclusion applies in all possible worlds." *Atlantic Mut. Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1038–39 (2002) (internal citations omitted; emphasis in original); *see also Royal Globe Ins. Co. v. Whitaker*, 181 Cal. App. 3d 532, 537 (1986) ("the burden is on insurer to prove a claim covered falls within an exclusion"); *Aydin Corp. v. First State Ins. Co.*, 18 Cal. 4th 1183, 1188 (1998) (same).

6. Any doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor. *Regional Steel Corp. v. Liberty Surplus Ins. Corp.*, 226 Cal. App. 4th 1377, 1389

WEINSTEIN & NUMBERS, LLP
115 WARD STREET
LARKSPUR, CALIFORNIA 94939

(2014).

7. "Once the duty to defend attaches, the insurer is obligated to defend against all claims involved in the action, both covered and uncovered, until the insurer produces undeniable evidence supporting an allocation of the defense costs to a noncovered claim." *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993).

8. No published California cases have construed the exclusionary language contained in Travelers' D&O policy. The Court finds the cases cited by the parties construing differently worded professional services exclusions in commercial general liability policies to be distinguishable. *See, e.g., Hollingsworth v. Commercial Union Ins. Co.*, 208 Cal. App. 3d 800, 805-10 (1989) (concluding an "insured's claim of coverage for 'professional services' must be evaluated in light of all the relevant circumstances in which that claim arises, including, but not limited to, the term's commonly understood meaning, the type and cost of the policy, and the nature of the enterprise" and that ear-piercing service fell within the professional services exclusion of a retail cosmetic store's "merchants package policy"); *Tradewinds Escrow, Inc. v. Truck Ins. Exch.*, 97 Cal. App. 4th 704, 707, 713 (2002) (claims based on alleged wrongful acts committed in the course of rendering escrow services, i.e., the failure to close escrow and ensuing loss of financing and eviction and other conduct associated with the escrow and sale of a property, would fall within professional services exclusion of CGL policy: the unifying factor in cases upholding exclusions is "whether the injury occurred during the performance of professional services, not the instrumentality of the injury"); *Food Pro Int'l, Inc. v. Farmers Ins. Exch.*, 169 Cal. App. 4th 976, 989-91 (2008) (distinguishing cases where the injury "arose from the performance of a professional service, not merely at the same time the insured was otherwise providing professional services to a third party" and finding plaintiff alleged involvement of insured "arose from his presence at the site, but the injury did not 'arise out of the rendering or failure to render any professional services.'").

9. The Court rejects Travelers argument that the "Architects and Engineers Professional Services Exclusion" applies because all of the allegations in the Damages Action were "based upon, arise out of, and relate to RMC's allegedly wrongful hiring" of Collins; the

7
AMENDED [~~PROPOSED~~] FINDINGS OF FACT AND CONCLUSIONS OF LAW
Case No.: 3:17-cv-00379-MEJ

hiring of Collins was "'with respect to' RMC's rendering of 'professional services'" for Marina, and those "professional services were 'in connection with' RMC's business as engineers." Exclusions must be read narrowly. *See, e.g.*, *Food Pro.*, 169 Cal. App. 4th at 992; *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 655 (2003), as modified on denial of reh'g (Sept. 17, 2003). Travelers' reading of the exclusion is overly broad.

10. The Marina Contract is not part of the Damages Litigation and none of the alleged liability is with respect to the manner in which RMC did or did not carry out the services it agreed to perform pursuant to that contract. Some of the claims asserted against RMC are based on the theories that RMC's failure to disclose the conflict damaged the plaintiffs who proceeded with the RDP, and that RMC's unlawful retention of Collins resulted in the voiding of multiple other agreements, which caused the RDP to collapse. These claims are not based on RMC's rendering of or failure to render professional services.

11. Unless the policy "clearly and unambiguously" excludes coverage, there is a duty to defend. *Penn. Gen. Ins. Co. v. Am. Safety Indem. Co.*, 185 Cal. App. 4th 1515, 1525 (2010). The Court finds that Travelers has failed to meet its burden to prove that the "Architects and Engineers Professional Services Exclusion" clearly and unambiguously eliminates the duty to defend RMC in the Damages Action.

12. Based on the inapplicability of the exclusion, Travelers has a duty to defend RMC against the claims alleged in the Damages Action. Defendant's Second Affirmative Defense (the Architects and Engineers Professional Services Exclusion applies to the underlying claims against RMC) as to all claims is without merit given the findings above.

## CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT, in accordance with this Order, Plaintiff is entitled to declaratory relief that Travelers owes a duty to defend RMC in the Damages Action.

8
AMENDED [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW
Case No.: 3:17-cv-00379-MEJ

Accordingly, JUDGMENT in favor of Plaintiff on Plaintiff's Third Cause of Action for declaratory relief is hereby ENTERED.

**IT IS SO ORDERED.**

DATED: October 24, 2017

_____
Honorable Maria-Elena James
United States Magistrate Judge